CASE 50—PETITION ORDINARY—SEPTEMBER 19.

# Richardson vs. Tipton, &c.

### APPEAL FROM MADISON CIRCUIT COURT.

1.  The title of personal property by capture is perfect as soon as it is in the firm possession of the captor. ( *Wheaton, Halleck, &c.* )
2.  Horses captured by Kentucky State troops, in the late war, became the property of the State, and were disposed of by her officers, and the United States never had even the shadow of a claim to such horses; and the seizure of such horses by United States horse-inspectors was wholly tortious.
3.  A party who sold a horse branded U. S., which was afterwards seized by a United State horse-inspector merely because he was so branded, is no more liable on his implied warranty of title than if any other trespasser had.seized the horse under any other pretended claim.

S. TURNER,　　　　　　　　　　　　　　For Appellant,

CITED—

4 *B. Mon.*, 201; *Chancellor vs. Wiggins.*

*Story on Sales*, secs. 264 *to* 266.

BURNAM & CAPERTON,　　　　　　　　　For Appellees,

CITED—

*Lawrence's Wheaton Int. Law*, 512, 596, 629.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The plaintiffs below, Tipton and Myers, introduced but one witness, J. F. Robinson, jr., whose deposition was taken, and he only proved that, during the year 1864, he and his partner, Grigsby, were then engaged in purchasing and selling horses to the United States, and that plaintiff Myers offered them a clay-bank horse, branded " U. S.;" that, before purchasing, they presented him to the United States horse-inspector for inspection, who

received him but declined paying for him on the ground that the horse belonged to the United States, and refused to return the horse.

Whereupon the defendant moved the court to instruct as in case of non-suit, which the court overruled, and exception was taken.

In *Plummer vs. Newdigate* (2 *Duvall*, 3) this court held, that the obscure brand of "U. S." does not prove title in the United States, as a deduction of law, because stolen horses have often been sold to the government, and such sale could not pass the title without the agency or consent of the owner; and that numbers of horses so properly branded, and being the property of the government, have afterwards been captured by the enemy, and, by the laws of war, became their property, and who might lawfully sell or exchange them and pass a good title, even against the United States, whose lost title could only be restored by repurchase or recapture from the enemy before the captor parted with the title.

Also, that many of the Federal military officers have personally owned horses branded " U. S.," and afterwards either sold or had them captured by the public enemy, without obliterating the brand. If the " U. S." should be deemed a *prima facie* presumption that the horse once belonged to the government, this is no stronger than the *prima facie* presumption of ownership from possession, especially as there may be no conflict between these presumptions, inasmuch as there are so many ways for the title legally to pass from the government.

The seizure by the horse-inspector of this horse, from the brand simply, has nothing, even presumptively, to sustain it; and as the evidence did not *prima facie* establish title in the government at the time of seizure, the non-suit should have been ordered, and this not being

done, is a fatal error to the judgment. But as it must go back for a new trial, we will settle the other questions raised upon the evidence and instructions.

The evidence conduced to prove these facts:

1. That the horse was in possession of Confederate soldiers, and was captured by an officer of the Kentucky State troops, who were then in the service of the State, raised to defend her, and not to go out of the State.

2. That the horse was delivered by the captors to a superior officer of the same regiment, when the horse was unauthorizedly branded " U. S."

3. That by order of the Adjutant General of Kentucky and authority of the Governor, Curtis, as a quartermaster of the State, sold said horse publicly, and gave a certificate of sale to the purchaser; that the title of Richardson was regularly derived from said purchaser.

4. That the sale was made in the presence of United States military officers, without objection on their part.

The title passed from the enemy by capture. The title of personal property by capture is perfect so soon as it is in the firm possession of the captor. So stated by Wheaton, Halleck, and other writers on the laws of nations and of war.

Who was the captor? Not any officer or soldier of the United States, but an officer and soldier of the State of Kentucky. The authorities of the State had been called on by the authorities of the United States to engage in the war and in the suppression of the rebellion, and she had an unquestionable right to defend her own territory against the incursions of hostile troops, and was permitted to do so.

The capture could not enure to the United States, because not made by its soldiers. No one had handed over

the property to the United States as captured for its benefit, nor had its authorized agents in any manner demanded this property; but the horse was captured by the soldiers of Kentucky. It was handed over to her authorities as her property, and by her authority sold, and this in the presence of Federal officers, who either consented to the sale or did not interpose to prevent it.

The government of the United States, as the evidence now stands, has not, and never did have, even the shadow of a claim to said horse, and the seizure by the United States horse-inspector was wholly tortious, and no more renders Richardson liable on his implied warranty than if any other trespasser had seized the horse under any other pretended claim, and the court should have so instructed the jury.

Wherefore, the instruction being radically at variance with this opinion, the judgment is reversed, with instructions for another jury and further proceedings in accordance herewith. The judgment of Richardson against Nado being based upon Richardson's responsibility to Tipton and Myers, must also be reversed, and abide the consequences of the next trial.